# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO CORONA M.,[1] <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br> Defendant. | Case No. 2:17-cv-09061-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## BACKGROUND

On March 28, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that he became disabled and unable to work

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

on July 1, 2011 due to back pain and anxiety. (Administrative Record ("AR") 205-217.) Plaintiff's claims were denied initially and on reconsideration. (AR 129-142.) An Administrative Law Judge ("ALJ") conducted a hearing on February 19, 2016, at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (AR 43-82.) In a March 7, 2016 written decision, the ALJ found Plaintiff not disabled. (AR 28-42.) The Appeals Council subsequently denied review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-7.)

## DISPUTED ISSUE

Whether the ALJ erred by failing to discuss Plaintiff's recurring dizziness allegedly associated with syncope or near syncope.

## DISCUSSION

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; history of testicular cancer; history of kidney stones; and history of non-specific chest pain. (AR 34.) The ALJ found that Plaintiff's anxiety was not a severe impairment. (AR 34-35.) He also concluded that Plaintiff's tachycardia did not constitute a severe impairment, explaining that "[t]his condition has only recently been worked up and there is no evidence that with appropriate

treatment, the claimant's condition would impose work restrictions for the required 12-month period." (AR 35.)

The ALJ noted Plaintiff's testimony that he filed his applications for disability based upon anxiety, back and groin pain, and testicular cancer. (AR 36; *see* AR 49.) The ALJ also noted that Plaintiff testified that he had last worked in July 2015, but stopped because he passed out on his way home from work. (AR 36; *see* AR 48, 50-52.)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ discussed the medical evidence related to Plaintiff's back impairment, testicular cancer, kidney stones, and non-specific chest pain. (AR 36.) The ALJ concluded that Plaintiff was limited to light work. (AR 35.) Relying upon the testimony of the VE, the ALJ determined that Plaintiff was able to perform his past relevant work. Consequently, the ALJ found Plaintiff not disabled. (AR 37.)

Plaintiff contends that the ALJ erred by failing to discuss evidence that he suffered from dizziness and syncope. (ECF No. 26 at 7-9.) In support of his claim, Plaintiff points to the following:

In August 2014, Plaintiff was taken by ambulance to a hospital after he became lightheaded and believed he might pass out. Plaintiff underwent an electrocardiogram ("EKG"), a CT scan of his brain, chest x-rays, and blood tests, all of which showed normal results. Plaintiff was discharged with a final diagnosis of "dizziness and focal numbness – uncertain cause." (AR 2435-2452.)

In August 2015, Plaintiff consulted Safwan Alboiny, M.D., complaining of headaches and dizziness. Plaintiff reported that he was driving when he turned his head and felt a sudden sharp pain on his left scalp. Plaintiff reported that "probably passed out for a few seconds," but he was able to drive himself to St. John's Hospital. The hospital informed Plaintiff that "everything was fine." (AR 2035.) Dr. Alboiny's physical exam was entirely normal. (AR 2037.) He indicated that Plaintiff needed a cardiac evaluation, an MRI, and an EEG. (AR 2038.)

3

On August 18, 2015, Plaintiff saw Marinor Isidoro-Torres, M.D. He reported that a hospital had placed a "hold" on his driver's license after he reported passing out while driving. In the area marked for "Assessment," Dr. Isidoro-Torres wrote loss of consciousness, headache, and acute exacerbation of chronic low back pain. Dr. Isidoro-Torres recommended that Plaintiff follow up with the neurologist to "clear" his driver's license. (AR 1925-1929.)

Plaintiff again complained of headaches and dizziness on October 14, 2015. His physical examination, again, was normal. (AR 1913-1916.)

On October 26, 2015, Plaintiff had a follow-up appointment with Dr. Alboiny. Plaintiff had not lost consciousness since his last visit. The MRI and EEG results were both normal. Plaintiff was referred for an electrophysiology evaluation and treatment for loss of consciousness. (AR 1908-1911.)

On October 28, 2015, Plaintiff saw Dr. Isidoro-Torres. He reported that he still experienced dizziness and near syncope. His physical examination was normal. Dr. Isidoro-Torres assessed Plaintiff with depression, near syncope, and dizzy spells and referred Plaintiff for a "cardiac work-up." (AR 1903-1906.)

In November 2015, Ishu Rao, M.D. evaluated Plaintiff. His notes indicate that Plaintiff had a single episode of syncope and that Plaintiff had no other signs or symptoms of neurocardiogenic syncope, such as nausea, vomiting, or diaphoresis. Plaintiff's physical examination was normal. Plaintiff was required to wear an external ambulatory monitor for three weeks and then return to discuss the findings. (AR 2056-2057.)

At a follow-up appointment on January 8, 2016, the recorder showed one episode of non-sustained ventricular tachycardia lasting less than one and a half seconds. Plaintiff reported that after removing the device, he had an episode of "near syncope." Dr. Rao referred Plaintiff to Andre Akhondi, M.D. for a stress echocardiogram. Plaintiff was to return to Dr. Rao after his stress test. (AR 1894 - 1897.)

4

In January 2016, Plaintiff saw Dr. Isidoro-Torres for back pain. Plaintiff indicated that his last episode of dizziness occurred one month prior. Plaintiff recovered right away. He denied chest pain, shortness of breath, or syncope with that episode. Plaintiff's physical exam was normal. Dr. Isidoro-Torres concluded that Plaintiff needed to follow up with cardiology. (AR 1890-1893.)

Treatment notes of Dr. Rao dated March 7, 2016 indicate that Plaintiff had a history of sudden syncope which did not appear to be of neurocardiac origin. Plaintiff had no recurrent symptoms, and his physical examination was normal and EKG were normal. Dr. Rao recommended that Plaintiff undergo an electrophysiology study to evaluate for inducible ventricular tachycardia. (AR 2276-2279.)[2]

At the administrative hearing, Plaintiff testified that he stopped working in July 2015 after he passed out on his way home from work. Plaintiff explained that the doctors did not know why he passed out, but he was undergoing tests. Plaintiff said that he had completed a stress test a week earlier and was waiting for the results. He also mentioned that the doctor had implanted a monitor that he would wear for a year. (AR 48-49, 74.) Plaintiff said that he lost his driver's license because he passed out while driving. (AR 74.)

While an ALJ must consider all the evidence available in a claimant's case record, *see* 42 U.S.C. § 423(d)(5)(B), he is not required to discuss every piece of evidence. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Rather, the ALJ "must explain why significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (citation and internal quotation marks omitted).

---

[2] Although this medical record was not submitted to the ALJ because it occurred on the date of his decision, the Appeals Council considered it. (*See* AR 2.)

As the Commissioner correctly points out, the existence of an impairment, diagnosis, or symptoms, does not mean that Plaintiff suffered from a significant limitation in his ability to perform work activities. A claimant must show more than the mere presence of a condition or ailment to establish a medically determinable severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.").

Here, Plaintiff cites various medical records describing his symptoms and treatment for dizziness, lightheadedness and/or syncope. Plaintiff does not, however, point to any objective evidence indicating that his condition resulted in any specific functional limitations. Nearly all of the medical test results in the record were normal or otherwise unremarkable. At most, the objective record reported one episode of non-sustained ventricular tachycardia lasting less than 1.5 seconds. After this single event, further testing showed no positive findings. (AR 2276, 2170.) Thus, there is no objective medical evidence that Plaintiff's syncope was a medically determinable impairment. Moreover, even if the record could be read to include medical diagnoses of syncope, "[t]he mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183-184 (9th Cir. 1990).

Given the absence of medical evidence that dizziness, lightheadedness and/or syncope restricted Plaintiff's ability to perform basic work activities, the ALJ did not err in failing to discuss these symptoms. *See Houghton v. Comm'r Social Sec. Admin.*, 493 F. App'x 843, 845-846 (9th Cir. 2012) (rejecting claim that ALJ erred in failing to discuss the plaintiff's depression, a heart condition, sleep apnea, a right heel injury, diabetes with neuropathy in the right leg, or obesity, explaining that "[t]he ALJ was not required to discuss these alleged medical conditions in the absence of significant probative evidence that they had some functional impact on Houghton's ability to work"); *Pierce v. Berryhill*, 2017 WL 2402829, at *3 (C.D. Cal. May 31, 2017) (rejecting claim that ALJ erred in failing to discuss evidence, explaining, "[a]lthough

plaintiff cites various medical records describing her conditions, symptoms, and treatment, she does not show how such evidence translates into any specific functional limitations"); *Guillen v. Colvin*, 2014 WL 4656422, at *7 (C.D. Cal. Sept. 17, 2014) (rejecting claim that ALJ failed to properly consider evidence of cataracts and rheumatoid arthritis because the plaintiff failed to cite any evidence that those impairments imposed any functional limitations); *Wright v. Colvin*, 2013 WL 6116904, at *2 (C.D. Cal. Nov. 19, 2013) (rejecting claim that ALJ erred in failing to discuss diagnoses of peripheral neuropathy and anemia and failing to discuss subjective complaints of blurry vision because the plaintiff had not pointed to any medical evidence suggesting any of these conditions more than minimally restricted her ability to perform basic work activities).

Finally, to the extent Plaintiff argues that his own subjective symptom testimony should have been the basis for functional limitations due to syncope, that testimony cannot be the sole basis for a finding of disability. *See Davis v. Berryhill,* 743 F. App'x 846, 849 (9th Cir. 2018) (ALJ did not err by failing to accept purported diagnosis where record lacked objective medical evidence, noting that subjective complaints of symptoms were insufficient to establish impairment and that 20 C.F.R. § 404.1528 "says that '[y]our statements alone are not enough to establish that there is a physical ... impairment'"); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (existence of impairment must be established by objective medical evidence, and not by symptom evidence alone); *see also* SSR 96-4p, 1996 WL 374187, at *1-29 (noting that "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings"); 20 C.F.R. §§ 404.1505, 416.905. Moreover, the ALJ here found that Plaintiff was not entirely credible and gave several specific and sufficient reasons for this finding. For example, the ALJ noted that Plaintiff failed to follow up with pain management,

thereby suggesting that his pain was not as bothersome as alleged; that despite allegedly debilitating pain, Plaintiff was working in car sales in August 2015; that the treatment record "does not show the type of "symptoms, complaints, or treatment from treating physicians that would be expected were the claimant as debilitated as alleged"; and that although Plaintiff was treated in the emergency room for kidney stones, he did not need strong prescription medications for the pain "suggesting that it would not more than minimally interfere with the claimant's ability to perform work activity." (AR 36.) Generally, the foregoing may constitute legitimate reasons upon which an ALJ may discount subjective complaints. *See, e.g.*, *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Indeed, Plaintiff has not challenged the adequacy of the ALJ's adverse credibility finding, and the ALJ's adverse credibility determination is another justification for not addressing syncope in the assessment of Plaintiff's RFC. *See Stenberg v. Comm'r Social Sec. Admin.*, 303 F. App'x 550, 552 (9th Cir. 2008) (after ALJ finds claimant not credible, "he was not required to include limitations that [claimant] claimed in reliance solely on her subjective reports of pain"); *Martini v. Berryhill*, 2018 WL 587855, at *10 (C.D. Cal. Jan. 29, 2018) (same).

**ORDER**

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 2/19/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE